ADMINISTRATORS OF ROGERS *against* SHALER et al.

After the hand-writing of a party is in evidence, his hand-writing, to any other instrument, may be proved by calling any witness to compare the hand-writing proved, with that to be proved, and to state his inference to the jury.

ASSUMPSIT for wages as mate and captain on board the brig Aspasia, on a voyage from New York to Rio Janeiro, and back to New York.

It appeared that the intestate had signed the usual ship-ping articles, as mate of the said vessel, on the voyage above mentioned; that he became captain at Rio Janeiro, and was lost overboard on the homeward voyage.

To support a set-off against the intestate's wages, the defendants offered in evidence the intestate's account-book, found in his trunk; and, to prove the intestate's hand-writing, called a witness who had never seen the intestate write, but who had received a letter from him, to testify whether, from a comparison of hands, he believed the book to be in the intestate's hand-writing.

This testimony was objected to by the plaintiff.

SPENCER, J. His hand-writing to the shipping articles is in evidence; the defendant is, therefore, at liberty to call upon any witness (whether such witness has seen the intestate write or not) to compare the hand-writing in evidence with the account-book produced, and state his inference to the jury, the jury not being competent to make such comparison.

The witness accordingly compared the hand-writing, and swore that he believed, from the comparison, that the signature to the articles, and the hand-writing in the account-book, were the hand-writing of the same person, and the book was thereupon received in evidence.(1)

*Edwards* and *Slosson*, for plaintiffs.

*Emmet*, for defendants.

(1) It is not necessary, in all cases, that the witness should have seen the party write, to whose hand he swears; for, where there has been a fixed correspondence by letters, and it can be made out that the party, writing such letters, is the same whose signature is in controversy, that will entitle the witness to swear to that person's hand-writing, though he never saw him write. Phil. Ev. 367. In this case, however, the witness had never seen the mate write, and had no fixed correspondence with him, and testified from a mere comparison of hands; his testimony, under these circumstances, ought not to have been received.

In the case of *Burr* v. *Harper*, (1 Holt's N. P. Cases, 420,) (which case comes nearest to this of any in the books, but is still strongly distinguishable from it,) a witness was called by the plaintiff to prove the defendant's hand-writing. He stated that he once saw him sign his name to a paper which he then had in his possession; that the fact made so slight an impression on his mind, that, judging from that single occurrence, he was not able to say whether the hand-writing produced was the defendant's, or not; that he would not venture, from the mere inspection of the papers, to form a belief on the subject; but that, by comparing the signature to which he was required to speak, with that which was subscribed to the papers in his possession, he was able to swear that he believed it to be his hand-writing. It was objected that this was a mere comparison of hand-writing, and consequently inadmissible. Dallas, J., decided that the evidence was admissible. He observed, however, that it was a case of great novelty and difficulty, and gave his reasons at large on the subject, which, inasmuch as they throw light on this matter, upon which the mind, in the pressure and hurry of business, may be frequently called upon to act, it may not be improper to state. Comparison of hand-writing (he remarks) has been rejected upon two grounds: First, That unless a jury could read, they would be unable to judge of the supposed resemblance.   Second, That specimens may be unfairly selected,

Administrators of Rogers v. Shaler.

calculated to serve the purpose of the party producing them; and, therefore, not exhibiting a fair example of the general character of the hand-writing. These are the grounds alleged for rejecting such comparisons. But the present evidence cannot, in strictness, be called a comparison of hand-writing. What are the materials of judgment to which a witness has recourse, when he says that he believes a particular signature to be the hand-writing of a particular person? He has seen the person write, and he is presumed to have formed a standard in his mind; and with that standard to compare the writing in question. This standard will be more or less perfect, according as the instances have been more or less frequent. The mere fact of having seen a man once write his name, may have made a very faint impression upon the witness' mind. But some impression, however slight in degree, it will make; and surely, as the standard exists, and the witness possesses the genuine paper, he may recur to it to revive his memory on the subject. Here, a basis is laid in the fact of his having seen the defendant sign his name once. But his memory is defective. He then recurs to a paper which he knows to be an authentic writing. He uses it to retouch and strengthen his recollection, and not merely for the purpose of comparison. Vide *ante*, *Haskins* v. *Stuyvesant*, and the note to that case.

There are, says Mr. Best, (in his work on the Principles of Evidence,) several exceptions to the rule excluding proof of hand-writing by comparison; the first of which is, that it is competent for the court and jury to compare the hand-writing of a disputed document, with any others which are in evidence in the cause, and admitted or proved to be in the hand-writing of the supposed writer; second, when the document is of such a date that it cannot be reasonably expected to find living persons acquainted with the hand-writing, either by seeing him write, or from holding correspondence with him. The law allows other ancient documents, proved to have been regularly preserved and treated as authentic, to be compared with the disputed one. This difficult, and, in some particulars, very subtle topic, has been discussed very learnedly and philosophically, by Mr. Best. and the authorities brought down to the year 1848. Best on Ev., 257; see, also, *Allesbrook* v. *Roach*, Peake's Add. Cases, p. 20, and the cases collected in a note; *Jackson* v. *Phillips*, 9 Cow. 94; *Griffith* v. *Ivery*, 11 Ad. & Ellis. 322.

Proof of hand-writing, by comparison, is the subject of the 73d novel of Justinian, which the diligent student will do well to consult.